## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.   GAYLORD "MAC" K. MCLERRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-14-992-C |
| | ) | |
| 1.   CROSSINGS COMMUNITY | ) | |
| CHURCH, INC., | ) | |
| | ) | ATTORNEY LIEN CLAIMED |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff, Gaylord "Mac" K. McLerran, and for his Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.      Plaintiff, Gaylord "Mac" K. McLerran, is an adult male resident of Canadian County, Oklahoma.

2.      Defendant Crossings Community Church, Inc., is an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), and (b) workers' compensation retaliation.

4.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.  This Court has supplemental jurisdiction over Plaintiff's corresponding state law

claim as it arises out of the same core of operative facts as the federal claims, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5.      Defendant is doing business in Oklahoma County. Defendant may be served in Oklahoma County.  Oklahoma County is located in the Western District of Oklahoma. And, many of the actions complained of herein occurred in Oklahoma County, including Plaintiff's termination.  Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.      Plaintiff has exhausted his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 2, 2014.  Plaintiff received his Dismissal and Notice of Rights letter from the EEOC dated June 18, 2014 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

### STATEMENT OF FACTS

7.      Plaintiff, Gaylord "Mac" K. McLerran, was born in 1937, making him over the age of forty (40) at all times relevant to this action.

8.      Plaintiff began working with Defendant in or around September 2008 as a contracted security officer.  Plaintiff later began working directly for Defendant in or around 2011.

9.      Throughout Plaintiff's employment, his performance was at least satisfactory, if not excellent.  Plaintiff had a great deal of experience in the security industry and had previously been a police officer.  As such, Plaintiff was assigned to protect Defendant's

Pastor every Sunday and had been selected to work with the Secret Service when First Lady

Mrs. Laura Bush spoke at Defendant's facilities.

10.      In or around September/October 2010, Kevin Carver became Defendant's

Director of Security. Carver treated Plaintiff less favorably than his younger, similarly

situated co-workers.

11.      For instance, shortly after Carver became Director of Security, he called

Plaintiff into the Security office and questioned Plaintiff about whether Plaintiff enjoyed his

job.  Plaintiff stated that he did enjoy working for Defendant and hoped to stay with

Defendant long-term.  Plaintiff also told Carver that he was very capable of performing his

job duties and had received no complaints from co-workers or church members.

12.      Several months later, Plaintiff was again called into the Security office and

further questioned by Carver about whether Plaintiff was happy with his job.  Plaintiff again

stated he enjoyed his job, greatly preferred performing security tasks in a church setting as

opposed to an industrial or police setting, and that he had no intentions of leaving his

position.  Plaintiff then stated to Carver, "You're trying to get rid of me, aren't you?" to

which Carver did not respond.

13.      Around this time, Pete Peterson, former Security Director and Plaintiff's

former supervisor, called Plaintiff to his office and told Plaintiff that he needed to be careful,

as Carver had told Peterson that Plaintiff was too old to be working for Defendant.

14.      In or around 2011, Plaintiff's hours were reduced from around 39 hours a week

to 29 hours a week by Carver. And, Plaintiff was notified that his pay was going to be cut

by approximately $2.00 to $3.00 per hour. Plaintiff was not given a reason for the reduction

in hours or pay.

15.     In or around April 2012, Plaintiff injured his knee while on the job when he

stepped off a curb while escorting Defendant's accountant to the bank. Plaintiff notified

Defendant of his on-the-job injury. Plaintiff had surgery on his knee on or about October 26,

2012.

16.     While off work recovering, Plaintiff was notified by Peterson and another

employee that Carver had again stated that he was trying to get rid of Plaintiff due to his age.

17.     And, on approximately three (3) different occasions, Security Officer Leland

McLing told Plaintiff that Carver had stated Plaintiff was too old to be working for

Defendant.

18.     Plaintiff returned to work on or about March 12, 2013. After his return,

Plaintiff was told by another security officer, Susan Perkins, that she had received a $2.00

per hour raise. Plaintiff had not been notified of a raise and asked Wayne Bollenbecher,

Director of Human Resources, if he would be receiving a raise, as other employees had.

Bollenbecher became visibly angry and told Plaintiff that if he ever heard him discussing

wages with another employee, he would be fired immediately. Plaintiff stated that he had

not asked anyone about their wages, but that another employee simply offered the

information to him. Bollenbecher again threatened that Plaintiff would be fired if he

discussed wages with other employees.

19.     On or about March 13, 2013, Plaintiff was given a raise of $0.45 per hour.

20.     On or about June 10, 2013, at the end of Plaintiff's shift, Carver was standing at Plaintiff's post when Plaintiff notified Carver that he was going to change out of his uniform shirt and clock out. Plaintiff removed his holster with his gun inside, placed it in his briefcase, and put the briefcase in the desk while Carver and another Men in Black security guard (contracted security guard) who was Plaintiff's relief remained at Plaintiff's post. Plaintiff then changed his clothes, retrieved his briefcase (with the relief security guard still at the post) and left for the evening.

21.     That night, Plaintiff opened his briefcase to check his work schedule and discovered his gun had been removed from the holster and was not in his briefcase. Plaintiff believed his gun had been stolen from his vehicle after leaving work that day. As Carver had been standing at Plaintiff's desk with Plaintiff's briefcase, Plaintiff knew the gun could not have been stolen at work. Regardless, Plaintiff filed a stolen gun report with the Oklahoma City Police Department that night.

22.     On or about June 14, 2013, Plaintiff arrived at work at his usual time of 4:45 a.m. and began to perform his duties. At around 8:15 a.m., Carver walked by Plaintiff's post and Plaintiff told Carver how he had to report his gun stolen, but it was bizarre that the thief did not take his holster or badge from his briefcase. Carver responded that he had seen Plaintiff's badge in the briefcase.

23.     Plaintiff kept his badge in a badge holder at the bottom of his briefcase under paperwork where it was not visible when the case was open and had never disclosed where he kept it to his co-workers.

24.     Carver then requested that Plaintiff accompany him to the security offices. When they arrived, Bollenbacher was waiting behind the desk, with Plaintiff's gun lying on the desk in front of him next to Plaintiff's termination papers.  Bollenbacher stated that he had spoken with the Church's attorney and there was nothing to discuss.  He told Plaintiff that he would be given severance pay if he signed the termination papers at that time.

25.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADEA

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

26.     The matters alleged above constitute violations of the ADEA in the form of age discrimination.

27.     Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, he was over the age of forty (40), was qualified for his job, was terminated, and his position was not eliminated at the time of his termination.

28.     As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is

also entitled to liquidated damages based upon Defendant's willful conduct.

## COUNT II:  WORKERS' COMPENSATION RETALIATION

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

29.   Defendant's actions, as described above, constitute retaliation in violation of the Oklahoma Workers' Compensation Act, 85 O.S. §341.

30.   Plaintiff sustained a job-related injury for which he could assert a claim for benefits under the Oklahoma Workers' Compensation Act.

31.   Defendant had knowledge of Plaintiff's work-related injury.  Defendant terminated Plaintiff's employment shortly after he put them on notice of his injury.

32.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

33.   Defendant's actions were willful, wanton and/or conducted in a reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 15th DAY OF SEPTEMBER, 2014.**

> s/Jana B. Leonard
> JANA B. LEONARD, OBA# 17844
> EMILY VAN VOLKINBURG, OBA #31744
> LEONARD & ASSOCIATES, P.L.L.C.
> 8265 S. WALKER
> OKLAHOMA CITY, OK 73139
> (405) 239-3800       (telephone)
> (405) 239-3801       (facsimile)
> leonardjb@leonardlaw.net
> emilyv@leonardlaw.net
>
> JURY TRIAL DEMANDED
> ATTORNEY LIEN CLAIMED